# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| MATHIAS W. SIMONIS, individually, and on behalf of all other individuals similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>SANTANDER CONSUMER USA, INC. d/b/a CHRYSLER CAPITAL and JOHN DOES 1-10,<br><br>  Defendant. | Case No. 3:22-cv-02770 |

## COMPLAINT

**NOW COMES** Plaintiff, MATHIAS W. SIMONIS, individually, and on behalf of all others similarly situated, by and through his undersigned counsel, complaining of SANTANDER CONSUMER USA, INC. d/b/a CHRYSLER CAPITAL ("Defendant") and JOHN DOES 1-10 as follows:

## NATURE OF ACTION

1. Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

2. "The primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.*, 896 F.3d 728, 738-39 (6th Cir. 2018) *citing* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991).

3. As the Supreme Court recently observed, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020)

## PARTIES

4. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Las Vegas, Nevada.

5. Defendant is a full-service finance provider for auto-dealers across the nation.[1]

6. Defendant maintains its principal place of business and headquarters in Dallas, Texas.

7. JOHN DOES 1-10 are third party vendors that Defendant utilizes to place outbound calls on behalf of Defendant. The identities of John Does 1-10 are unknown to Plaintiff at this time and will be identified through discovery.

8. At all times relevant, Defendant had an agency relationship with John Does 1-10 whereby Defendant (as the principal) had the right to control and direct the activities of John Does 1-10 (as the agents) and John Does 1-10 (as the agents) had the authority to act on behalf of Defendant. Accordingly, Defendant, as the principal of John Does 1-10, is liable for the acts of its agents John Does 1-10.

## FACTUAL ALLEGATIONS

9. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the cellular telephone number ending in 3669.

---

[1] https://chryslercapital.com/about

10. At all times relevant, Plaintiff's number ending in 3669 was assigned to a cellular telephone service.

11. At all times relevant, Plaintiff was financially responsible for his cellular telephone services.

12. In May 2022, Defendant started placing phone calls to Plaintiff's cellular phone number in an attempt to contact an individual unknown to Plaintiff.

13. Shortly after the calls began, Plaintiff answered a call from Defendant.

14. Upon answering Defendant's call, Plaintiff was greeted with an artificial and/or prerecorded voice prior to being transferred to a live representative.

15. Once Plaintiff was connected with a live representative, Plaintiff (1) informed the representative that he is not the individual that Defendant is trying to contact, (2) notified Defendant that it was calling the wrong number; and (3) requested that Defendant cease its calls to Plaintiff's cellular phone number.

16. In response, Defendant's representative advised Plaintiff that his number will be "removed" from Defendant's system.

17. Despite Plaintiff's request that Defendant cease its misguided calls and Defendant's representation that Plaintiff's number would be "removed" from Defendant's system, Defendant continued pounding Plaintiff with calls in an effort to contact an unknown third party.

18. Plaintiff repeatedly answered Defendant's calls and repeatedly (1) notified Defendant that it was calling the wrong party; (2) advised Defendant that he does not know the individual that Defendant was trying to reach; and (3) requested that Defendant cease is misguided calls.

19. Plaintiff's pleas fell on deaf ears and Defendant continued placing misguided collection calls to Plaintiff's cellular phone number.

20. In some of the calls that Plaintiff did not answer, Defendant would leave prerecorded voicemail messages ("robocalls") stating:

> "Hello. This is Chrysler Capital. Please respond promptly by accessing your account online at myaccount.chrystlercapital.com or by contacting any of our servicing department representatives at 1-855-563-5635 between the hours of 7a.m. and 9 p.m. central time Monday through Friday, and 7 a.m. to 5p.m. central time on Saturday. This is a recording."

21. It was clear to Plaintiff that Defendant's voicemails utilized an artificial and/or prerecorded voice because (1) all voicemails contained the identical message; (2) all voicemails were precisely the same duration; (3) the voicemails were all monotone and were conspicuously not left by a live representative; (4) none of the voicemails identified the intended recipient by name; (5) all voicemails directed Plaintiff to call a toll free number to speak to an unidentified representative; and (6) all voicemails explicitly stated "this is a recording".

22. Upon information and belief, the prerecorded voicemail message described in Paragraph 20 is Defendant's stock voicemail that automatically plays if Defendant's call is not answered.

23. In total, Plaintiff requested that Defendant cease its misguided calls on at least three separate occasions between May 2022 and the present.

24. In total, Defendant placed no less than fifty (50) robocalls to Plaintiff's cellular from May 2022 through the present, including calls from the phone number (855) 563-5635.

25. At no point in time did Plaintiff provide Defendant with consent to place calls to his cellular telephone number ending in 3669.

## DAMAGES

26. Plaintiff values his time, privacy, and solitude.

27. Defendant's invasive robocalls have disrupted Plaintiff's everyday life.

28. Defendant's misguided collection calls have invaded Plaintiff's privacy and have caused Plaintiff damages, including: aggravation that accompanies unwanted robocalls, increased risk of personal injury resulting from the distraction caused by the misguided robocalls, wear and tear to Plaintiff's cellular phone, unauthorized trespass of Plaintiff's cellular phone, temporary loss of use of Plaintiff's cellular phone, loss of battery charge, loss of concentration, mental anguish, nuisance, the per-kilowatt electricity costs required to recharge Plaintiff's cellular phone as a result of increased usage of Plaintiff's telephone services, and wasting Plaintiff's time.

30. Moreover, each time Defendant placed a telephone call to Plaintiff, Defendant occupied Plaintiff's cellular phone such that Plaintiff was unable to receive other phone calls or otherwise utilize his cellular phone while his phone was ringing.

31. As a result of Defendant's repeated refusal to cease its invasive robocalls, Plaintiff was forced to retain counsel and file this action to compel Defendant to cease its unlawful conduct.

## CLASS ALLEGATIONS

32. All Paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

33. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All individuals residing in the United States (1) to whom Defendant placed, or caused to be placed, a call; (2) directed to a number assigned to a cellular telephone service; (3) using an artificial or prerecorded voice; (4) in connection with a third party's account; (5) without his/her consent; (6) within the four years preceding the date of the original complaint through the date of class certification.

34. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; (3) Plaintiff's attorneys; (4) individuals who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors, or assigns of any such excluded individuals; and (6) individuals whose claims against Defendant have been fully and finally adjudicated and/or released.

A. **Numerosity**

35. Upon information and belief, the members of the Putative Class are so numerous that joinder of them is impracticable.

36. The exact number of the members of the Putative Class is unknown to Plaintiff at this time and can only be determined through targeted discovery.

37. The members of the Putative Class are ascertainable because the Class is defined by reference to objective criteria.

38. The members of the Putative Class are identifiable because their telephone numbers can be identified in business records maintained by Defendant.

B. **Commonality and Predominance**

39. There are many questions of law and fact common to the claims of Plaintiff and the Putative Class.

40. Those questions predominate over any questions that may affect individual members of the Putative Class.

6

### C. Typicality

41. Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as a result of Defendant's conduct.

### D. Superiority and Manageability

42. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

43. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

44. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

45. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

### E. Adequate Representation

46. Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

47. Plaintiff has no interests antagonistic to those of the Putative Class and Defendant has no defenses unique to Plaintiff.

48. Plaintiff has retained competent and experienced counsel in consumer class action litigation.

## CLAIMS FOR RELIEF

## COUNT I

**Violations of the Telephone Consumer Protection Act (47 U.S.C. § 227 *et. seq.*)**
**(On behalf of Plaintiff and the Members of the Putative Class)**

49. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

50. Plaintiff is a "person" as defined by 47 U.S.C. §153(39) because he is an individual.

51. Defendant is a "person" as defined by 47 U.S.C. §153(39) because it is a corporation, partnership, association, or joint-stock company.

52. Section 227(b)(1)(A)(iii) of the TCPA prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or *an artificial or prerecorded voice*" to "any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2344 (2020) (emphasis added).

53. Defendant violated § 227 (b)(1)(A)(iii) of the TCPA by placing no less than fifty (50) calls to Plaintiff's cellular phone number utilizing an artificial or prerecorded voice without Plaintiff's consent.

54. As pled above, Defendant utilized an artificial and/or prerecorded voice that automatically played upon Plaintiff answering the call or the call reaching Plaintiff's voicemail.

55. As pled above, Plaintiff suffered damages as a result of Defendant's unlawful robocalls.

56. Upon information and belief, Defendant does not maintain adequate policies and procedures to ensure compliance with the TCPA.

57. Upon information and belief, Defendant has failed to implement protocols to ensure that misguided calls cease.

58. Instead of updating its records/systems to cease robocalls to unintended recipients, Defendant blatantly ignores the unintended recipients' requests that the calls cease, resulting in the continuation of invasive robocalls.

**WHEREFORE**, Plaintiff, on behalf of himself and the members of the Putative Class, requests the following relief:

A. an order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;

B. a judgment in Plaintiff's favor finding that Defendant violated 47 U.S.C. § 227 (b)(1)(A)(iii);

C. an order enjoining Defendant from placing further unlawful calls to Plaintiff and the members of the Putative Class;

D. an award of $500.00 in damages to Plaintiff and the members of the Putative Class for each TCPA violation;

E. an award of treble damages up to $1,500.00 to Plaintiff and the members of the Putative Class for each TCPA violation; and

F. an award of such other relief as this Court deems just and proper

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: December 13, 2022                                  Respectfully submitted,

*/s/ Mohammed O. Badwan*
Mohammed O. Badwan
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
(630) 575-8180
mbadwan@sulaimanlaw.com